## FITZGERALD v. UNITED STATES.

Circuit Court of Appeals, Sixth Circuit.
Jan. 9, 1929.

No. 5204.

Fred S. Day, of Cleveland, Ohio (George A. Hurley, of Cleveland, Ohio, on the brief), for appellant.

John B. Osmun, Asst. U. S. Atty., of Cleveland, Ohio (A. E. Bernsteen, U. S. Atty., of Cleveland, Ohio, on the brief), for the United States.

Before MOORMAN, HICKS, and KNAPPEN, Circuit Judges.

HICKS, Circuit Judge. Appellant, John J. Fitzgerald, "Flop" Burns, alias "Shorty" Burns, and Frank Filley were indicted for a violation of section 21 of the Criminal Code (section 54, 18 USCA). The indictment charged that these three knowingly conspired and agreed together to personally injure one Arnot P. Foster, a federal prohibition agent, by committing an assault and battery upon him while he was engaged in the lawful discharge of his duties investigating violations of the National Prohibition Act (27 USCA). Upon arraignment Fitzgerald entered a plea of not guilty and was placed on trial alone. He was convicted, and entered a motion for a new trial which was overruled. He appealed and assigned errors.

Assignments of error 3 and 5, and the last clause of assignment 6, taken together, fairly challenge the denial of a directed verdict. These were the only assignments of error discussed in the brief or urged in argument. In considering the motion for a directed verdict, we must take that view of the evidence most favorable to appellee, and, if there is substantial testimony warranting a conviction, the motion must be overruled. Hodge v. United States, 13 F.(2d) 596 (C. C. A. 6). It is uncontradicted that Foster was a federal prohibition agent; that he came to Cleveland, Ohio, on June 1, 1927; that on June 9th Mr. Plappert, his superior officer, introduced him to Filley; that this was his first acquaintance with Filley; that he went with Filley to Filley's car, parked at the east side of the Federal Building in Cleveland; that he sat in the car while Filley absented himself, without explanation, for some 5 or 10 minutes; that when Filley returned they drove to 117th street, where Foster left Filley at Filley's suggestion; that Foster proceeded a block and a half or two blocks to 136 West 117th street for the purpose of making investigation at that point of alleged violations of the National Prohibition Act.

It is uncontradicted that Foster found there a brick garage and blacksmith shop facing on the street, a little alley running from the street along the right side of the garage and shop to a small frame shack or shanty built against the rear of the garage, and on the back end of the lot a little yard or court

and a dwelling house. Foster entered the shanty and found Burns there. In the shanty was a desk, several chairs, and a telephone. Appellant was paying rent for the shanty, and there was evidence tending to show, though not clearly, that appellant, Burns, and others were operating the place as a sort of liquor exchange. While Foster was seated in the doorway, with his back to the door, and was parleying with Burns in an effort to purchase whisky, Burns said, "Wait a minute, somebody wants to see you," and thereupon Foster was dragged into the alley, presumably by Fitzgerald, who was then in the alley, and was backed against the brick wall of the garage, and held by Burns and another, who in the meantime had come from the dwelling house, while Fitzgerald struck him about the face and body. Foster was knocked down and kicked in the face, and seriously injured. During this assault one of the attacking parties said, "So you are Foster, are you?" Up to this time Foster had not revealed his identity, his official position, or the real purpose of his visit.

The clear inference therefore is that appellant and Burns had had advance information; that Foster's scheme had been "tipped off" by Filley by telephone during the interval in which he had absented himself from the car at the Federal Building. On the record no one had been advised of Foster's movements save Filley, and he had had ample time and opportunity to report them. The existence of a conspiracy may be shown by inference, Israel v. United States (C. C. A.) 3 F.(2d) 743, 744, or by circumstances, Remus v. United States, 291 F. 501 (C. C. A. 6). ▪ If the case lacks further detail, it is supplied by the following uncontroverted circumstance: This assault occurred about 1 or 1:30 p. m. Appellant was arrested about 4 o'clock the same afternoon, and lodged in the police station that night. In the evening of the next day, witness Walker found on the floor of a police station a letter and newspaper clipping which had been inclosed in an envelope and crumpled into a ball. Appellant wrote this letter. He insists that the letter was nothing more than a comment upon the newspaper account of the affair, as shown by the inclosed clipping. Appellee insists that the letter was tantamount to a confession or admission of guilt or at least indicated guilt. The following significant excerpt is taken from the letter, to wit:

"Got down to the place around 3 o'clock and Shorty told me about getting the tip this Federal pimp was coming out well when I got there he was also and keep trying to lead Shorty into getting a pint. Well I stood it as long as I could and I finally collared him and he had a bad excuse why he was there, so I will enclose the following from the Morning paper but don't believe all you hear in there as I don't know who the three was unless they count me for two. * * * They went in the back of the place and broke all the bottles we had there and threw the corks all over the lawn, but didn't get anything."

The last sentence evidently has reference to that portion of the newspaper account to the effect that, after the occurrence, Plappert and other federal agents had visited the place. This letter was relevant as against the defendant, who alone was on trial and the effect and weight to be given to it were matters for the determination of the jury, when considered in the light of all other proven circumstances. Chadwick v. United States (C. C. A.) 141 F. 225, 239.

Upon the whole we conceive that the verdict has substantial support in the evidence, and that there was therefore no error in the denial of a directed verdict, and the judgment is affirmed.