**UNITED STATES v. PETTI.**
**No. 270, Docket 20984.**

Circuit Court of Appeals, Second Circuit.

May 25, 1948.

222

Halle & Halle, of New York City (Edward Halle, of New York City, of counsel), for appellant.

John F. X. McGohey, U. S. Atty., of New York City (Bruno Schachner, Asst. U. S. Atty., of new York City of counsel), for appellee.

Before L. HAND, SWAN and CLARK, Circuit Judges.

SWAN, Circuit Judge.

The appellant was arrested in his hotel room in New York City on charges having no relation to the crime of which he was later convicted, namely, conspiracy to transport securities in violation of the National Stolen Property Act, 18 U.S.C.A. § 418a. After his arrest the arresting officers searched his room and found in a suit case traveler's checks of the face value of $5400, which had been stolen from the office of the American Express Company in Atlantic City, N. J. One of the thieves had left these traveler's checks with the appellant's co-conspirator, Rosenberg. The latter testified as a witness for the prosecution that he delivered the traveler's checks to the appellant in New Jersey and the appellant promised to see what he could do to dispose of them. The jury acquitted the appellant on a count charging the substantive offense of transportation, but convicted him on a count charging conspiracy to transport. His appeal raises two interesting questions: the first involves the legality of the search by which the traveler's checks were discovered, and the second concerns whether the checks were "securities" of the value of at least $5,000.[1]

The facts concerning the search incident to the appellant's arrest are not in dispute. On October 31, 1945 four agents of the Federal Bureau of Investigation were assigned to arrest the appellant on a charge or charges unrelated to the present indictment.[2] Having information that the appellant was registered in room 340 in the Hotel Taft in New York City, the agents proceeded to this hotel at 7:30 P.M. Two of the agents remained in the hotel lobby and two went to room 340 accompanied by an assistant manager of the hotel, who opened the door with a pass key, allowed the agents to enter, and locked the door behind them. A bench warrant had been issued for the appellant's arrest on one of the above mentioned unrelated charges but none of the four F.B.I. agents had a copy of the warrant and no search warrant had been issued. The two agents who entered room 340 remained there until the appellant returned to his room at 1:30 A.M. He was then arrested and a search of this room followed, which resulted in finding in the closet a suit case containing a paper bag in which were the traveler's checks. These were seized by the agents and were

---

[1] Section 418a of Title 18 makes criminal a conspiracy to violate any provision of sections 413–419 of Title 18.

Section 415 provides that "Whoever shall transport or cause to be transported in interstate * * * commerce any * * * securities * * * of the value of $5,000 or more theretofore stolen * * * knowing the same to have been so stolen * * * shall be punished by a fine * * * or by imprisonment * * or both * * * ."

Section 414(b) provides that "The term 'securities' shall include any note * * traveler's check, * * * evidence of indebtedness * * * or, in general, any instrument commonly known as a 'security' * * * or any forged, counterfeited, or spurious representation of any of the foregoing."

[2] One charge was desertion from the army; the other violation of the Emergency Price Control Act of 1942, 50 U.S. C.A.Appendix, § 901 et seq.

introduced in evidence at the trial as Exhibit 2 over the appellant's objection.

■■ The lawfulness of the search and seizure turns first upon the legality of the arrest and second upon whether the ensuing search was fairly incidental to the arrest. The second point must be answered affirmatively on the authority of Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399, which sanctioned a search more extensive that the one here involved. Upon the first point the appellant relies on Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, which extended the protection of the Fourth Amendment to the defendant's "living quarters" in a hotel; but that case is distinguishable because there no warrant had been issued for the arrest of the defendant when the officers gained access to her hotel room to arrest her. In the case at bar a warrant of arrest had been issued, and the Federal Rules of Criminal Procedure make it unnecessary for the arresting officer to have the warrant in his possession.[3] An officer with a warrant, after a summons to open, may even force his way in to make the arrest. Bishop, New Criminal Procedure, 1913 ed., §§ 195, 204, 205; Commonwealth v. Reynolds, 120 Mass. 190, 196; State v. Shook, 224 N.C. 728, 32 S.E.2d 329, 333. Since under the rules a warrant may be executed by an officer not in possession of it, we think the agents had authority to gain access to the hotel room with the manager's consent, and to wait there for the appellant's return. See United States v. Dean, D.C. Mass., 50 F.2d 905. Thus the arrest was lawful and the search incidental thereto was likewise lawful.

■ The appellant contends that the traveler's checks in their incomplete form were not "securities" but were pieces of paper without value. The checks were signed by an officer of the Express Company but the spaces for the signature and counter-signature of a purchaser were unfilled and no payee's name was inserted after the words "Pay this cheque from our Balance to the Order of............" Except for delivery to a prospective purchaser, the check was complete so far as the Express Company was concerned. The authorities are not in accord as to the precise legal characteristics of traveler's checks before they have been completely filled out. See Negotiability of Travelers Checks, 47 Yale L.J. 470. Where a thief signed and countersigned the stolen check and transferred it to a bona fide holder in due course, the latter was allowed to enforce it against the company in American Express Co. v. Anadarko Bank & Trust Co., 179 Okla. 606, 67 P.2d 55, 110 A.L.R. 972. But the contrary was held in City National Bank of Galveston v. American Express Co., Tex.Com.App., 16 S.W.2d 278. If the theft occurs after issuance to a purchaser, the traveler's check has been held a "security" for purposes of the National Stolen Property Act, although the purchaser had not affixed his countersignature. Pines v. United States, 8 Cir., 123 F.2d 825, 828. The statute expressly includes any "traveler's check," and in our opinion this should be construed to cover such a check before as well as after its issuance to a purchaser. The purpose of the statute is to discourage the theft of evidences of indebtedness which may be made vehicles of fraud. A traveler's check is intended to be akin to currency as a circulating medium and to be accepted from anyone tendering it without further identification than the identity of the signature and countersignature. See Peoples Savings Bank v. American Surety Co., D.C.W.D.Mich; 15 F.Supp. 911, 913. If both are blank, the thief can use the check to commit fraud even more easily than when forgery of the countersignature is required to make the document usable. In our opinion, therefore, the checks in question were "securities" within the meaning of the statute. And the value of the "securities" should

---

[3] Rule 4(c) (3), 18 U.S.C.A. following section 687 as follows:

"(3) Manner. The warrant shall be executed by the arrest of the defendant. The officer need not have the warrant in his possession at the time of the arrest, but upon request he shall show the warrant to the defendant as soon as possible. If the officer does not have the warrant in his possession at the time of the arrest, he shall then inform the defendant of the offense charged and of the fact that a warrant has been issued. * * * "

be judged by their face amount, since the thief by signing and countersigning can use the securties to obtain such sum from a victim of his fraud.

It is urged that the verdict of guilt on the conspiracy count is unsupported by the evidence but the point is without merit. Rosenberg delivered the checks in New Jersey to the appellant, who was rooming in New York and said he would see if he could dispose of them. The checks were in fact transported to New York, and the inference that the conspirators contemplated such transportation is plain.

Finally the appellant argues that acquittal on the substantive count precludes conviction on the conspiracy count either on the theory of res judicata or double jeopardy. He relies on Sealfon v. United States, 332 U.S. 575, 68 S.Ct. 237. But that case lends no support to his argument. There the defendant's acquittal on a charge of conspiracy was a valid defense to a later prosecution for a different offense. The doctrine has no application to different counts in the same indictment or to consolidated indictments.

Judgment affirmed.