ROSS et al. v. UNITED STATES.

No. 11429.

United States Court of Appeals
Sixth Circuit.

Decided May 29, 1952.

Joseph B. Keenan, Alvin O. West, Washington, D. C., on the brief, for appellant Irving Ross.

Robert N. Gorman, Cincinnati, Ohio, for appellants Martin Ross and Milton Gecker.

Ray J. O'Donnell, Frank J. Richter, Cincinnati, Ohio, on the brief, for appellee.

Before ALLEN, MARTIN and MILLER, Circuit Judges.

MARTIN, Circuit Judge.

The three appellants have again been convicted by a jury of violation of section 1731(a), Title 12, U.S.Code [revised section 1010, Title 18 U.S.Code], and sentenced to fines and imprisonment. On their former trial, they were also found guilty upon a count charging conspiracy, section 88 [revised section 371], Title 18 U.S.C., to violate that section; but their second trial resulted in acquittal on the conspiracy count of the joint indictment against them. On both trials, appellants Milton Gecker and Martin Ross were convicted on Counts Two, Four and Eleven, and Gecker was found guilty on both trials on Count Six of the indictment. On the first trial, Irving Ross was found guilty on Counts, Two, Four, Five, Six and Eleven: on the second trial, he was found guilty only on Counts Two and Eleven.

We reversed the former judgment of conviction and sentence as to each appellant and remanded the case to the District Court for a new trial, because of an incorrect instruction given the jury and misconduct of the United States Attorney. In awarding a new trial, however, we pointed out that the Government had adduced abundant substantial evidence to support the verdict of the jury on all counts upon which the respective defendants had been found guilty. Ross v. United States, 6 Cir., 180 F.2d 160. Without indulging in extensive factual narrative, our opinion described the manner in which the appellants operated

in violation of section 1731(a) of Title 12, U.S.C.[1]

█ The points on appeal have been urgently pressed by counsel for Martin Ross and Milton Gecker and by separate counsel for Irving Ross. All three appellants insist that the District Court should have entered judgments of acquittal on the substantive counts, which they say contain the same allegations as to the overt acts which were charged in the conspiracy count upon which the defendants were acquitted. They rely upon Sealfon v. United States, 332 U.S. 575, 68 S.Ct. 237, 240, 92 L.Ed. 180, as authority for their position. In that case, the Supreme Court reversed a conviction where, after a first trial had resulted in his acquittal on a conspiracy charge, the defendant was tried and convicted on substantially the same evidence for violating a different section of the United States Code. The opinion of the Supreme Court recognized as long-standing law that the commission of a substantive offense and a conspiracy to commit it are separate and distinct offenses but held "on the particular facts" involved that the verdict of the jury on the conspiracy trial was a determination favorable to the defendant of facts essential to conviction of the substantive offense charged on the second prosecution, and that res judicata was therefore a valid defense. It was demonstrated that the basic facts in each trial were indentical and that the defendant could have been convicted of either offense only on proof that he wrote a certain letter pursuant to agreement with a particular person and could have aided and abetted that person in no other way. The opinion

writer pointed out that the core of the prosecution's case was the same in each case: the letter, the circumstances surrounding it and to be inferred from it, and the false invoices. "It was a second attempt", said the Court, "to prove the agreement which at each trial was crucial to the prosecution's case and which was necessarily adjudicated in the former trial to be non-existent."

In the Sealfon case, there was a second trial on a substantive count after a previous acquittal on a conspiracy count. Here, there was one trial on a conspiracy count and several substantive counts embraced in a single bill of indictment. The Sealfon case did not purport to overrule and has not had the effect of overruling the opinion of Mr. Justice Holmes in Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356.

In the Dunn case, it was held that where offenses are separately charged in the counts of a single indictment, though the evidence be the same in support of each an acquittal on one may not be pleaded as res judicata of the other. It was stated that consistency in a verdict is not necessary and that each count of an indictment is regarded as if it were a separate indictment. The language of Judge Hand in Steckler v. United States, 2 Cir., 7 F.2d 59, 60, was quoted with approval: "The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the ac-

1. Sec. 1731(a), Title 12 U.S.C. "Whoever, for the purpose of obtaining any loan or advance of credit from any person, partnership, association, or corporation with the intent that such loan or advance of credit shall be offered to or accepted by the Federal Housing Administration for insurance, or for the purpose of obtaining any extension or renewal of any loan, advance of credit, or mortgage insured by the said Administration, or the acceptance, release, or substitution of any security on such a loan, advance of credit, or for the purpose of influencing in any way the action of the said Administration under this chap-

ter, (makes, passes, utters, or publishes, or causes to be made, passed, uttered, or published any statement, knowing the same to be false, or alters, forges, or counterfeits, or causes or procures to be altered, forged, or counterfeited, any instrument, paper, or document, or utters, publishes, or passes as true, or causes to be uttered, published, or passed as true, any instrument, paper, or document, knowing it to have been altered, forged, or counterfeited,) or willfully overvalues any security, asset, or income, shall be punished by a fine of not more than $3,000 or by imprisonment for not more than two years, or both."

quittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity." [284 U.S. 390, 52 S.Ct. 190.] Mr. Justice Holmes concluded: "That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters."

■ The Court of Appeals for the Second Circuit has made valuable contributions to the subject matter under discussion. We are in accord with their reasoning. In United States v. Petti, 2 Cir., 168 F.2d 221, 224, the argument of an appellant, based on the Sealfon decision, that his acquittal on a substantive count precluded his conviction on a conspiracy count on the theory of *res judicata* or double jeopardy was rejected. The Court said: "There [the Sealfon case] the defendant's acquittal on a charge of conspiracy was a valid defense to a later prosecution for a different offense. The doctrine has no application to different counts in the same indictment or to consolidated indictments." In United States v. Coplon, 2 Cir., 185 F.2d 629, 633, the same court rejected the argument that if an acquittal would have been *res judicata* had the trials been at different times it was an adjudication when the verdict was simultaneous, saying that when at the same trial a jury renders inconsistent verdicts of acquittal and conviction the inconsistency is immaterial and the conviction will stand. See to same effect Robinson v. United States, 9 Cir., 175 F.2d 4, 9, 10, wherein it was pointed out that nothing in the Sealfon case applies to verdicts which are all received at the same time in a single trial. See also Pilgreen v. United States, 8 Cir., 157 F.2d 427, 428. Cf. Young v. United States, 10 Cir., 168 F.2d 242, 246; United States v. Bazzell, 7 Cir., 187 F.2d 878, 884.

In Coplin v. United States, 9 Cir., 88 F.2d 652, 661, it was held that, inasmuch as verdicts on different counts in an indictment need not be consistent, acquittal on a count charging conspiracy did not have the effect of preventing the acts of each defendant from being admissible against others under a substantive count not charging conspiracy.

See also Bell v. United States, 8 Cir., 2 F.2d 543, in which it was held that where overt acts charged are substantive offenses specifically denounced by statute, an acquittal on a conspiracy count does not prevent conviction on counts charging such acts as offenses.

■ Appellants Martin Ross and Milton Gecker filed motions to require the United States Attorney to elect upon which counts of the indictment he would proceed to trial and to obtain separate trials for each. This motion stated that, inasmuch as Gecker and Martin Ross had been acquitted on Count Five and Martin Ross on Count Six of the indictment, and Irving Ross was still charged in those two counts, it would be prejudicial to them to be tried jointly with Irving Ross where evidence would be offered in support of the counts on which they had been acquitted. The motion for election or severance was said to be supported by the opinion of this court in Castellini v. United States, 6 Cir., 64 F.2d 636, and by the opinion of the Supreme Court in McElroy v. United States, 164 U.S. 76, 17 S.Ct. 31, 41 L.Ed. 355.

The motion was denied by the District Judge. His action is sustained for the reason that the determination of the question rested in his sound discretion and, under the circumstances revealed, we find no abuse of discretion upon his part in denying the motion.

Rule 8 of the Federal Rules of Criminal Procedure makes provision for the joinder of offenses and of defendants in one indictment, in the following language: "(a) Joinder of offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offense charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan. (b) Joinder of defendants. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an

offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count."

 Rule 14 of the Federal Rules of Criminal Procedure, 18 U.S.C., entitled "Relief from Prejudicial Joinder", reads as follows: "If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires." As stated in the committee note to this rule, it is merely a restatement of existing law under which severance and other similar relief is entirely in the discretion of the court. 18 U.S.C. § 557. See Pointer v. United States, 151 U.S. 396, 14 S.Ct. 410, 33 L.Ed. 208; Pierce v. United States, 160 U.S. 355, 16 S.Ct. 321, 40 L.Ed., 454.

Neither the Castellini case, supra, nor the McElroy case, supra, would require the District Court to grant the motion for election and severance in the instant case.

In the Castellini case, it appeared that an indictment for making false entries in the records of a bank had been consolidated with an indictment for misapplication of the funds of the bank. The two transactions were separate and unrelated. In the instant case, there is close relationship among the transactions covered in the several counts. In the McElroy case, supra, as stated by Chief Justice Fuller, 164 U.S. 79, 17 S.Ct. 32, 41 L.Ed. 355, the several charges in the four indictments consolidated for trial were not against the same persons, nor did they cover the same act or transaction or two or more acts or transactions connected together. They were, in the opinion of the highest court, "not for two or more acts or transactions of the same class of crimes or offenses which might be properly joined, because they were substantive offenses, separate and distinct, complete in themselves and independent of each other, committed at different times and not provable by the same evidence."

Morgan v. United States, 8 Cir., 98 F.2d 473, 475, is closely in point and authoritative against the contention of appellants. There, in the prosecution of two brothers for using the mails to defraud where they were closely associated in transactions involving the offense charged, no abuse of discretion by the trial judge was found in his denial of the petition for severance and a separate trial of one brother.

Appellants repeat their insistence made on the former appeal that the evidence in the case failed to prove any offense cognizable by section 1731(a), Title 12 U.S.C. We have twice previously rejected this argument and given our reasons for doing so. See Ross v. United States, 6 Cir., 180 F.2d 160, 164; Cohen v. United States, 6 Cir., 178 F.2d 588, 591. We adhere to our expressed views.

Appellants Martin Ross and Milton Gecker contend that they were entitled to judgments of acquittal and that the verdicts of the jury finding them guilty on the several counts upon which they were convicted are not supported by evidence. The appellant Irving Ross contends that there was no substantial evidence that he knew of the falsity of the respective representations made in the credit applications to support the verdicts of guilty found against him on Counts Two and Eleven of the indictment.

We have heretofore described in our former opinion in this case the manner in which appellants violated section 1731(a) of Title 12 U.S.C. Ross v. United States, 180 F.2d 160, supra. There is no material variance in the present record in the revelation of the method employed by them to violate the section; and it is considered fruitless to repeat. The two-volume record now before us has been carefully considered to ascertain whether there is substantial evidence to support the conviction of each appellant on all counts upon which he was convicted by verdict of the jury. We shall attempt to be brief, as long fact reviews clutter up already overcrowded case reports, and merely to point out some of the salient evidence upon which the convictions rest.

 In reviewing fact issues, an appellate court in a criminal case, as well as in a civil case, is concerned only with

whether the record discloses substantial evidence to support the verdict of the jury, Stilson v. United States, 250 U.S. 583, 588 40 S.Ct. 28, 63 L.Ed. 1154; and the evidence must be considered in the light most favorable to the Government. As was said in United States v. Manton, 2 Cir., 107 F.2d 834, 839: "In passing upon the sufficiency of the proof, it is not our province to weigh the evidence or to determine the credibility of witnesses. We must take that view of the evidence most favorable to the government and sustain the verdict of the jury if there be substantial evidence to support it. Hodge v. United States, 6 Cir., 13 F.2d 596; Fitzgerald v. United States, 6 Cir., 29 F.2d 831." It will be noted that the two cases cited by Mr. Justice Sutherland are from this circuit. See also Cossack v. United States, 9 Cir., 82 F.2d 214.

In Bogy v. United States, 6 Cir., 96 F.2d 734, 740, we held that, in consideration of the rule that on a motion for directed verdict the evidence must be considered in the light most favorable to the party against whom the motion is urged, no quantity of contradictory evidence will authorize a trial court to direct a verdict if there is sufficient substantial evidence to take the case to the jury.

Applying these principles to the facts of record, we find that there is substantial evidence to support the guilty verdicts upon all counts upon which each of the three appellants was convicted.

The counts of the indictment upon which any one or more of the defendants was convicted will be considered in numerical order.

All three appellants were convicted on Count Two, which related to their transactions with Lula Mae Smith and her husband, Otto A. Smith, Jr. The false representations made in the application were that Smith had paid $2,600 for their house; that the husband was born in 1925, which would have made him 21 years old at the time; and that he was employed by the Government at a salary of $80 per month. The wife testified, as did her husband, that they had paid only $2,100 for their home; that the husband was born in 1926 and not

in 1925, which made him under 21 years of age when the application was executed; and that he was not employed by the Government, but was receiving unemployment compensation of $20 a week as an unemployed veteran. The husband died after the first trial, and so his testimony then given was read to the jury at the second trial. Both husband and wife denied that they made false statements to the salesmen.

Irving Ross signed the credit application, which also contained other handwriting by him. We think the evidence of the two witnesses—despite some confusion—was sufficient to justify the finding of the jury that all three appellants were involved in the fraudulent transaction. The credit application showed several alterations in the figures; and the jury evidently considered that Irving Ross either made the alterations, or was aware of them. His handwriting appeared on the notice introduced in evidence, as well as on the F. H. A. Dealer's Statement which he filled out when he applied for credit with the Universal C. I. T. Credit Corporation. The testimony of Haberbush of that company ties Irving Ross in with the transaction. Otto Smith testified that he dealt with all three appellants. He said that he discussed the credit information with Irving Ross; that Irving told him that it would cost him nothing to have siding put on his house; that Irving was at the house at least three times; that the papers which were signed were placed in such fashion that he was unable to tell how many papers he was signing; but he claimed that only his name, address and birth date, "slightly worked over", were on the loan application when he signed it. He swore that he did not know that he was signing an application for credit in the sum of $800, or a promissory note for $919.63. He said that Irving told him that the money with which the siding was to be paid for would come out of the $25 to be received by the Smiths for every house sold as a result of the advertising of the Smith house as a model. He identified both Irving and Martin Ross as having contacted him concerning re-siding his house and stated that Gecker was with Irving at his house several times in connec-

tion with the transaction. Lula Mae Smith emphatically identified Gecker as one of the men with whom she and her husband conversed concerning the work to be done on their house. Martin Ross made damaging admissions. He admitted changing on the application the amount paid for the home from $2,100 to $2,600, stating, however, that after he had written in the first amount as the purchase price the wife had told him that about $500 worth of improvements had been made on the property after they had bought it. The jury, as they had a right to do, evidently paid slight attention to his alleged reason for making the change. He admitted that he had caused the Smiths to sign a blank promissory note and did not tell Otto Smith the amount to be specified in the note. He admitted, also, that he told the Smiths that they would receive $25 for every house sold by reason of their recommendation; and that he gave them $100 altogether in fulfillment of this promise.

Appellants Martin Ross and Milton Gecker were found guilty and sentenced on Count Four of the indictment which related to transactions with a 68 year old man, Grant Smith, who had received only a third-grade education, and his wife, Cordie Smith, who died after testifying on the previous trial of this case. Her testimony at the first trial was read at the second. She swore that her mother owned the house involved at the time of the transactions in question, and still owns it. She said that Martin Ross and Gecker told her that the siding put on the house would cost them nothing, but that they would receive $25 per month for letting the house be used as a model for advertising purposes. She testified that she was induced to sign three papers which were not filled out at the time she signed them. Grant Smith identified Gecker and Martin Ross as the men with whom he dealt. He said that Gecker made the sales talk, telling him that he would enable Grant to put siding on his house, claiming himself to be the head of a firm which wanted to use the house as a model. Grant testified that he told Gecker the house did not belong to him; but that, despite this, Gecker induced him to sign his name to a piece of paper, stating that it was just for the record. Grant said that he had his wife, Cordie, also sign the paper. He denied that he told the salesman he was making $220 per month, for he was not making any such amount, although that sum was written into the application. Grant was positive that there was nothing on the application when he signed it. He states that the signature on the completion slip is not his, that it is signed with ink, and that the paper he signed was signed with a "stubby pencil". Gecker admitted that he had presented Grant Smith for signature a blank note which was not filled out at all, and also that, after the note was signed showing the amount promised to be paid, he did not show it to Grant Smith or his wife.

Milton Gecker was the only appellant found guilty on the Sixth Count of the indictment, which concerned Gecker's transactions with Lorena Delabar and her father, William H. Delabar. The daughter did not testify because of illness. The father identified Gecker as the first person with whom he had dealings in connection with re-siding his house, and stated that Gecker had told him that he wanted to have the siding on the house for 36 months for advertising purposes. The Delabars had been given the usual promise of $25 to be paid to them for each house on which siding was sold as a result of the advertising promulgated by the advertisement of the Delabar home. He swore that Gecker had stated that he was part owner of the construction company, which enabled him to make arrangements for re-siding the house at no expense to the owners. Mr. Delabar testified that he signed as a witness to his daughter's signature on a plain sheet of paper, which was represented by Gecker as being a permit necessary in order to put the siding on the Delabar house, and not as a credit application. He stated that his home had been purchased for $2250, instead of the $2,700 as shown on the application, and that neither he nor his daughter had ever told anyone that his salary was $100 per month; nor had his daughter, Lorena, told anyone that her salary was $150 per month, as shown on the

credit application. Her salary was between $25 and $30 per week. He stated that the completion slip which bore his daughter's name had not been signed either by her or by him. He gave a credible explanation why this was true. Gecker admitted that he had the Delabars sign blank promissory notes. Delabar swore that he did not know that he had signed obligations to pay $977.32 at the rate of $27.15 per month for 36 months.

All three defendants were found guilty on the Eleventh Count of the indictment, which related to transactions between them and Thomas McManaway and his sister, Veronica McManaway. There was considerable confusion in the brother's testimony as to the identity of the two Ross brothers. He swore that the man who first talked to him about the siding transaction was Martin Ross, but he pointed in the court room to Irving Ross as that man. However, viewing his whole testimony, we find that both Martin and Irving Ross were involved in the unlawful transaction. Both he and his sister identified Gecker as having participated in inducing them to have siding put on the McManaway house. The usual bauble of a $25 bonus was held out. Martin Ross admitted that he was delivered a promissory note signed in blank by the McManaways only a little more than an hour after he contacted them. The credit application turned in by appellants stated that Thomas McManaway was in the employ of the county highway department in the engineer's office on a salary basis of $240 per month; that the McManaways had $30 per month income from a farm; and that they had paid either $4500 or $7500 for the house, depending upon how the observer reads the first figure of the numerals. McManaway testified that they had paid only $2300 for the house and did not tell the salesman a lie, and that he did not state that his salary was $240 a month, because it was not. He also denied stating to the salesman that there was an additional income to the two McManaways of $30 per month. Veronica corroborated her brother as to the cost of the home; stated that his salary was between $1500 and $1600 a year; and that she did not hear her brother tell the salesman that he earned $240 per month. McManaway stated that the arrangement was that, though the siding work was to cost them nothing in consideration of the usual bonus for advertising credits, he was to state to people that the siding job cost him some $1400. The exhibits show alterations in the figures on the credit application. True, the signature on the credit application is that of Martin Ross; but the document shows on its face not only the handwriting of Martin Ross, but also, in numerous places, that of Irving Ross. The McManaway note bears the endorsement of Irving Ross on behalf of the Portsmouth Construction Company and was delivered by him to the Universal C. I. T. Credit Corporation at its Portsmouth office. Inasmuch as Irving Ross had charge of the documents on which his handwriting appears, there was justification for finding that he had guilty knowledge of the crooked transactions charged in the Eleventh Count.

According to the testimony of A. P. Haberbush, in charge of the Portsmouth office of the Universal C. I. T. Credit Corporation through which appellants obtained the loans in question, Irving Ross came to his office in August of 1946 and introduced himself as owner of the Portsmouth Construction Company, making known that he was in the siding business and desired to know whether the Universal C. I. T. would like to handle his contracts, or notes. He represented to Haberbush that he had handled F. H. A. paper before and made an F. H. A. Dealer's Statement. He discussed in detail with Haberbush the method of filling out a customer's application for credit, the completion certificate, and promissory note. Haberbush testified that he discussed with Irving Ross discrepancies in one of the accounts, subsequently handled, questioned the irregular or illegal method employed by Irving Ross and his salesmen in selling the siding—particularly with respect to the statement that a customer would receive the promised $25 bonus if siding were placed on his house. Haberbush said that he also had pointed out to Irving Ross on a previous occasion that the transaction of Government matters should

not be handled loosely. Appellants left Portsmouth the day after Haberbush had conversed with Irving Ross about the discrepancies in the practice and procedure followed by him and his salesmen.

Appellants Martin Ross and Milton Gecker contend that the District Judge erred in refusing to give a requested special instruction that the testimony relating to Count Five, which applied to Irving Ross alone, could not be received on the substantive counts against them. We think there is no merit in the argument, for the reason that the District Judge charged the jurors that they "should not consider the testimony in other counts in which Martin Ross and Milton Gecker are not parties." There was no reversible error in the refusal of the Court to give the special instruction as requested.

The same two appellants complain mildly of improper admission of certain evidence. The able and experienced trial judge committed no reversible error in the reception or exclusion of evidence.

The judgment of sentence and conviction as to each of the three appellants is affirmed.

O'Connell, J., dissented.