UNITED STATES of America
v.
Frank DAVID.
Cr. No. 21511.
United States District Court
N. D. Ohio, E. D.
Feb. 7, 1958.

⌖1288

Sumner Canary, U. S. Atty., Cleveland, Ohio, for plaintiff.

James C. Herndon, Sam Bartlo, Akron, Ohio, Charles K. Correll, Canton, Ohio, for defendant.

WEICK, District Judge.

The defendant stands convicted on two counts of an indictment charging him with wilful evasion of income taxes for the years 1948 and 1949.

He has filed his motion for judgment of acquittal, or in the alternative, for a new trial.

Complaint is first made that during the trial the Court permitted the Government attorney to distribute to the jury photostatic copies of stipulated net worth computations for the years 1947, 1948 and 1949, the original of which, except as to items of cash in dispute, had already been received in evidence as Joint Exhibit "1A". The purpose was to permit the jury to intelligently follow the testimony of the witness Keller as to his computations without being confused over a lot of figures.

No objection to this procedure was made at the time by defendant's counsel. After the photostats had been handed the jury defendant's counsel then objected and the Court instructed the jury that they were merely photostats of an exhibit already received in evidence by stipulation of the parties, except as to said cash items which represented what the Government contended. The Court further instructed the jury that the photostats were for explanatory and illustrative purposes.

The jury could not see the figures on the admitted Exhibit "1A". It is not understandable how defendant could be prejudiced by permitting the jury to follow the witness' testimony by permitting them to use a photostatic copy of the exhibit which the parties had jointly offered in evidence, particularly since the Court explained the purpose and that the cash items represented only what the Government contended he had on hand. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150. During the course of Mr. Keller's testimony the figures were explained in detail and the exhibit was later received in evidence as Gov't Ex. 17 for explanatory and illustrative purposes.

It is next contended that the Court erred in refusing to order the Government to produce a transcribed unsigned statement of the defendant, Frank David, when the witness Keller was on the stand.

Jencks v. United States, 1957, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103, and Title 18 U.S.C.A. § 3500 are cited as authority.

The statute (Title 18 U.S.C.A. § 3500) was in force at the time of trial

and, therefore, governs. Lohman v. United States, 6 Cir., 1958, 251 F.2d 951.

██ Under this statute, the Government would be required to produce the statement of the witness Keller at the end of his direct examination. Defendant was granted permission to interrogate the witness Keller and he established that the witness had made a written report of his investigation of the case which report the Government produced and handed to defense counsel for their examination and inspection. Defendant did not offer this report in evidence.

Defendant claims that, under this statute, the Court should, in addition, have ordered production of the transcribed unsigned statement of the defendant David taken on September 25, 1950.

██ The statute will bear no such interpretation as it requires only the production of the statement of a witness of the Government who has completed his direct examination. It does not require production of the statement of any other person.

██ The Court would have no right to extend the operation of the statute beyond what its plain language requires.

In any event, the point is without merit because the statement was later given to defendant's attorney during the cross-examination of defendant and it was received in evidence as Gov't Exhibit 21.

On Page 28 of defendant's brief is contained the following:

"The statement was admitted as Gov't Exhibit 21 over the objection of defendant's counsel."

The record does not support this claim, but on the contrary shows that defense counsel consented to the admission of the exhibit in evidence.

In his reply brief, defendant further charges as error the admission in evidence, over his objection, of the statement of the witness Spilker. The record does not support this claim, but shows that the statement originally was received in evidence as a Joint Exhibit "1-c", without objection, and the numbering was later changed to Gov't Exhibit "1-c".

When it was offered by the Government attorney, he addressed defense counsel "If you have no objection."

Defense counsel made no objection. Later when the exhibit was remarked Gov't Exhibit "1-c" defense counsel stated: "other than that, we don't object to it." This referred to some pencil marks on the exhibit which were removed.

It is further contended that the Court erred in not admitting testimony of the witnesses Spilker and Correll concerning their conversations with the defendant.

These conversations were hearsay evidence and, therefore, inadmissible, but notwithstanding this fact the record will show that most of the conversations related to defendant's alleged recovery of about $12,300 from Mae Wise and were in fact admitted in evidence without objection.

Furthermore, defendant took the witness stand and gave direct testimony on this subject.

We now come to the consideration of defendant's motion for judgment of acquittal.

██ The rule applicable in this case was laid down by the Court of Appeals in Ross v. United States, 6 Cir., 1952, 197 F.2d 660 and requires the Court to consider the evidence in the most favorable light to the Government. There must, however, be substantial evidence to support the verdict of the jury.

The Government's case was based solely on the "net worth" method of computation to prove the claimed understatements for the years 1948 and 1949.

The parties agreed to all the items on the defendant's net worth statements for the years 1943 to 1949, inclusive, except cash on hand and living expenses for the years 1943 to 1947, inclusive.

There were substantial increases in defendant's net worth during the indictment years not reflected in the income shown on his income tax returns.

The question for determination by the jury was whether these increases in net worth resulted from taxable income received by the defendant during the years in question as claimed by the Government or from use of cash on hand which he had accumulated prior thereto.

As is usual in cases involving net worth computations, defendant claimed he had a large amount of cash on hand which the Government did not take into account.

It was the contention of the Government that defendant had cash on hand as of December 31, 1947 in the amount of $17,500, $18,634.72 on December 31, 1948 and $15,957 on December 31, 1949.

Defendant, on the other hand, claimed that he had cash on hand of $28,000 to $30,000 on December 31, 1947.

After the tax investigation started in this case, defendant's attorney Chas. K. Correll on December 21, 1950 sent to the Government, seven financial statements of defendant as of December 31st for the years 1943 to 1949, inclusive. Each of the statements showed cash in safe deposit box of $12,500. These statements had been prepared by defendant's auditor Spilker.

The Government in its net worth computations as of December 31, 1947, gave defendant credit for $5,000 more cash than was shown in his statement as of the same date which he had furnished to the Government. This inured to his benefit, as without this credit, his increase in net worth for 1948 would have been much larger.

In his statement, which was given to Agents Keller and Kaufman on September 25, 1950, defendant stated that the largest amount of cash which he had on hand since 1942 was $16,000 to $18,000 in 1949. Agents Keller and Kaufman actually counted the money in defendant's safe deposit box on August 11, 1950 in the amount of $15,957.

Furthermore, in November 1948 defendant furnished George D. Harter National Bank of Canton a financial statement, for use in connection with a loan, which showed cash on hand of $18,634.22.

The Government used the figure of $18,634.22 shown as cash on hand in the Harter Bank statement of November 1948 to establish the beginning cash on hand December 31, 1948, which was very close in point of time. Also the actual cash in the amount of $15,957 counted on August 11, 1950 was used by the Government to establish the amount of the cash on hand on December 31, 1949.

Defendant's auditor Lawrence testified that the only accurate way to establish cash on hand on a given date is to count it.

If this were required under the law, there never could be a conviction for income tax evasion where the net worth method of calculation is used, because only the defendant is in a position to count the money and the jury would have to believe whatever he said.

In my judgment, there was substantial evidence to justify the verdict of the jury with respect to Count Number two of the indictment.

In order to establish the beginning cash figure of $17,500 as of December 31, 1947, involved in the first count of the indictment, the Government subtracted from the cash of $18,634.22 shown on the Harter Bank statement of November 1948, the amount of $12,500 cash on hand shown on the statements defendant furnished to the Government for the years 1943 to 1947, inclusive, and obtained the figure of $6,134 which it distributed pro rata as additional income to defendant over those years.

It also calculated that from defendant's reported income over those years he had a possible cash accumulation of $5,362. It added this amount of $5,362 to the amount of $12,300 which defendant, in his written statement made on June 25, 1942 admitted he had on hand, to obtain the approximate beginning figure of $17,-500 for December 31, 1947.

The jury was carefully instructed as to the law applicable to the case in accordance with the cases of Holland, Friedberg, Smith and Calderon reported in 348 U.S. at pages 121, 142, 147 and 160, 75·

S.Ct. at pages 127, 138, 194 and 186, respectively. No claim is made here that the charge was erroneous in any respect.

The jury was not compelled to believe the testimony of the defendant that he had $28,000 to $30,000 cash on hand on December 31, 1947, but could, in determining his credibility, take into account his previous plea of guilty, in this Court, to the charge of income tax evasion for the years 1941 and 1942, and the fact that each year thereafter he understated his income except the year 1947.

The jury also had a right to consider, in determining his guilt or innocence, his admission that he had $12,300 in cash in 1942; the seven financial statements which he furnished the Government for the years 1943 to 1949, inclusive, each showing cash on hand in the amount of $12,500; his admission in 1950 that the largest amount of cash he had on hand since the year 1942 was $16,000 to $18,000 in 1949; the actual count of the cash on August 11, 1950 in the amount of $15,957; his financial statement to George D. Harter Bank in November 1948 showing $18,634.22 on hand; the testimony of Mae Wise that defendant did not report all of his sales; that he threw away a portion of the cash register tape on which his daily sales were recorded and told her to mind her own business, when she remonstrated; the stipulation of assets and liabilities which included all items except cash on hand on the critical dates and living expenses for some of the years.

Under all the evidence in this case the jury could find that the beginning cash of $17,500 for the year 1948 was reasonably accurate.

Defendant complains that the Government computations did not reflect any credit for his understatements during the pre-indictment years. The testimony of Mr. Keller is to the contrary as he testified that the difference in cash amounting to over $6,000 was prorated as additional income over those years. Defendant had paid taxes on $3,269 additional income, and the Government also took into account his living expenses during those years.

Nor was the jury bound to believe defendant's story about the alleged theft of $12,300 of his money by Mrs. Mae Wise. He sued Mrs. Wise to recover this money and lost the case. He claims that later, at different times, he found the money in Mrs. Wise's home, but did not tell her about it. During part of this time he was either rooming or visiting at the Wise home and had a garden there and Mrs. Wise worked on occasions at his restaurant.

When Mrs. Wise testified against him in this trial he did not ask her a single question about the alleged theft of his money or its recovery.

The verdict of the jury is supported by substantial evidence.

The motion for judgment of acquittal or in the alternative for a new trial is overruled.

Sentence is deferred until February 14, 1958 at 10:00 a. m.