UNITED STATES, Appellant,

v.

Leslie M. SMITH, Appellee.

No. 7910.

District of Columbia Court of Appeals.

Argued May 15, 1974.

Decided May 7, 1975.

**500**

Joseph B. Valder, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry and William S. Block, Asst. U. S. Attys., were on the brief, for appellant.

Patrick J. Christmas, Washington, D.C., for appellee.

Before KERN, GALLAGHER and YEAGLEY, Associate Judges.

GALLAGHER, Associate Judge:

This appeal presents the question of whether the government is collaterally estopped from a retrial of the defendant (appellee) for obstruction of justice. He was originally tried by jury under an indictment containing three counts: obstruction of justice, threats to do bodily harm and bribery.[1] He was acquitted of the charges of threats to do bodily harm and bribery, and the jury "hung" on the charge of obstruction of justice. Prior to retrial on obstruction of justice, the trial court dismissed with prejudice this charge on the ground of collateral estoppel. It is this ruling which is before us. We reverse on the ground that the doctrine of collateral estoppel does not apply here.

Essentially, the trial court grounded its dismissal on its conclusion that the elements of the "threats" charged in the indictment are essential elements of proof with respect to the charge of obstruction of justice. This being so, said the trial court, by its verdict of not guilty on the "threats" charge, the jury determined the issue with respect to the identical threats alleged in the obstruction of justice charge.[2]

1. D.C.Code 1973, §§ 22–703, 22–2307 and 22–701, respectively.

2. In the original trial of this case the trial judge gave the following instructions:
   (1) *On threatening to injure a person*—"In order to find the defendant guilty as charged, the Government must prove, beyond a reasonable doubt, that the defendant, within the District of Columbia, threatened to injure the person of another, namely, William W. Johnson." (TR 136)
   (2) *On obstruction of justice*—"[T]he Government must establish the following elements of the offense, beyond a reasonable doubt, as follows:
   \*　　\*　　\*　　\*　　\*　　\*
   3.) That the defendant, by threats endeavored to influence, or intimidate, or impede a complaining witness—again, Officer Johnson—in the discharge of his duties, that is giving testimony in a proceeding in which he was to be a witness." (TR 134, 135)
   (3) *On intent*—"[G]eneral intent only is required for the threats, but specific intent is required for the bribery and the obstruction of justice." (TR 131)
   (4) *On the multiple counts*—"A separate offense is charged in each of the counts in this indictment. Three separate offenses; threats, obstructing, bribery. Three distinct charges. Each offense, and the evidence applicable thereto, should be considered separately. The fact that you may find the defendant guilty, or not guilty, on any one count in the indictment, does not control or influence your deliberations, or your verdict, with respect to the other counts in the indictment. Example, you can't say 'He's guilty of one, find him guilty of the other two.' You don't do it that way. 'He's not guilty of the first one, so he's not guilty of the other two.' *You have to deliberate on each one; take a look at each*

We say this is not necessarily so, fundamentally for two reasons: (a) we have here a multiple count indictment, as distinguished from a single charge, in the first trial and (b) the jury "hung" in the first trial on the very charge the government now seeks to retry.

The fundamental requirement for application of the doctrine of collateral estoppel is the ability to conclude what the jury must necessarily have determined at the prior trial. Hoag v. State of New Jersey, 356 U.S. 464, 472, 78 S.Ct. 829, 2 L.Ed.2d 913 (1958).

This case is not susceptible of this conclusion. The first obstacle is that we have here a multiple count indictment in the first trial where the jury "hung" on the very charge involved in the retrial (obstruction of justice).[3] A "hung" jury determines nothing except an inability to reach a verdict. The crucial consideration is that where a jury considers a multiple count indictment one is frequently unable to discern, as required by the doctrine of collateral estoppel, what the jury *must* have determined factually. This is because juries commonly return inconsistent verdicts on various counts of an indictment for reasons of lenity, mistake, inadvertence, or no reason at all.[4] "[W]hen a jury convicts upon one count and acquits upon another the conviction will stand, though there is no rational way to reconcile the two conflicting conclusions." Robinson v. United States, 175 F.2d 4, 10 (9th Cir.), cert. denied, 338 U.S. 832, 70 S.Ct. 75, 94 L.Ed. 506 (1949), citing Seiden v. United States, 16 F.2d 197, 198 (2d Cir. 1926). "The jury may have merely exer-

cised a clemency that is its prerogative without regard to logic." United States v. Robinson, 154 U.S.App.D.C. 265, 272, 475 F.2d 376, 383 (1973). Such "inconsistency is immaterial." Ross v. United States, 197 F.2d 660, 663 (6th Cir.), cert. denied 344 U.S. 832, 73 S.Ct. 40, 97 L.Ed. 648 (1952). "Juries may indulge in precisely such motives or vagaries." United States v. Coplon, 185 F.2d 629, 633 (2d Cir.), cert. denied, 342 U.S. 920, 72 S.Ct. 362, 96 L.Ed. 688 (1952), citing United States v. Dotterweich, 320 U.S. 277, 279, 64 S.Ct. 134, 88 L.Ed. 48 (1943).

In Sealfon v. United States, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180 (1948), the defendant was acquitted of conspiring to defraud the United States Government. In a subsequent trial he was found guilty of the substantive offense of defrauding the United States Government. The court held that since there was only one issue involved, i. e., whether there was an agreement, the doctrine of res judicata applied.

In Ashe v. Swenson, 397 U.S. 436, 90 S. Ct. 1189, 25 L.Ed.2d 469 (1970), the Supreme Court held that the doctrine of collateral estoppel in criminal cases is embodied in the Fifth Amendment guarantee against double joepardy. In *Ashe* the defendant was allegedly involved in the robbery of three persons. A jury in the first trial, faced with a single count indictment, found him not guilty of robbing one of the victims, this being the only charge. In this situation the Supreme Court reasoned that collateral estoppel applied in a subsequent trial for robbing one of the other two persons noting that the state "frankly conceded" that "it treated the first trial as no more than a dry run for the second prose-

---

one *individually, because they're all separate counts.* It may be part of an overall picture with respect to the offense when it was committed, if you believe it was committed, but when you look at the total picture, you've got to separate it. *You consider one, decide it, and then consider the next and so on. You don't take your verdict based on what you decide on one and apply it to the others. You must decide each one separately.*" (TR 130–131) (Emphasis added.)

3. It would hardly be contended post-trial that if the jury had convicted on the obstruction charge, this course was not open to it since it acquitted on the threats charge.

4. If in the first trial there had been only a single count under the threats charge with an acquittal resulting and the government sought a second trial on a new charge of obstruction of justice, we might possibly have been faced with a different question.

cution . . . ." *Id.* at 477, 90 S.Ct. at 1196. The Supreme Court further explained in *Ashe*, the doctrine of collateral estoppel, drawing upon its decision in Sealfon v. United States, *supra:*

> "Collateral estoppel" . . . means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.
>
> \*  \*  \*  \*  \*  \*
>
> Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and *conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration."* The inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." Sealfon v. United States, 332 U.S. 575, 579, 68 S.Ct. 237, 240.
>
> . . . The *single rationally conceivable issu*e in dispute before the jury *was whether the petitioner had been one of the robbers.* And the jury by its verdict found that he had not. The federal rule of law, therefore, would make a second prosecution for the robbery of Roberts wholly impermissible.
>
> \*  \*  \*  \*  \*  \*
>
> The question is . . . simply whether, after a jury determined by its verdict that the petitioner was not one of the robbers, the State could constitution-

ally hale him before a new jury to litigate that issue again. [*Ashe,* 397 U.S. at 433–446, 90 S.Ct. at 1194–1195; Emphasis added.]

For the purposes of distinguishing the *Ashe* and *Sealfon* doctrines in the circumstances of this case, it is necessary to recall that *Ashe* and *Sealfon* dealt with single count indictments in the first trial where the government attempted, in effect, to retry factually the same case it had just lost.

■ It has long been the law that the *Sealfon* doctrine "has no application to different counts in the same indictment or to consolidated indictments." United States v. Petti, 168 F.2d 221, 224. (2d Cir. 1948); [5] Ross v. United States, *supra,* 197 F.2d at 663. *See also* United States v. Marcone, 275 F.2d 205, 206 (2d Cir.), cert. denied, 362 U.S. 963, 80 S.Ct. 879, 4 L.Ed.2d 877 (1960); Robinson v. United States, *supra,* 175 F.2d at 10; United States v. Coplon, *supra,* 185 F.2d at 633; cf. Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932). Though there were no second trials involved in those cases, they dealt with situations where there were assertedly inconsistent acquittals and guilty findings under multiple count indictments.[6] Here, there was not only a multiple count indictment but the jury "hung" on the identical charge which the government sought to retry and, consequently, even though appellant was acquitted of the "threats" charge, one is unable to demonstrate that the jury must have found in his favor the ultimate facts underlying the obstruction of justice charge.[7]

■ To illustrate, if one concludes the jury had necessarily found there were no

---

5. Remanded for a new trial on another issue, 336 U.S. 916, 69 S.Ct. 639, 93 L.Ed. 1079 (1949).

6. For a circuit by circuit recitation of cases involving this factual situation, all circuits being in agreement, *see* United States v. Fox, 140 U.S.App.D.C. 129, 132 n. 21, 433 F.2d 1235, 1238 n. 21 (1970).

7. We do not have here the seemingly oppressive and confusing array of charges found in Cosgrove v. United States, 224 F.2d 146 (9th Cir. 1954), which we gather gave rise to that decision.

threats made, this conclusion is undercut by the jury's failure also to acquit on the obstruction *by threats* charge.[8] It did not do so. This demonstrates there is not present here the required showing that the jury *must* have determined there were no threats. "Unless the record of the prior proceeding affirmatively demonstrates that an issue involved in the second trial was definitely determined in the former trial, the possibility that it may have been does not prevent the relitigation of that issue." United States v. Haines, 485 F.2d 564, 565 (7th Cir. 1973), cert. denied, 417 U.S. 977, 94 S.Ct. 3184, 41 L.Ed.2d 1147 (1974).

If in a situation such as this, one were to view the acquittal on the "threats" charge in a vacuum this approach might lead eventually to the point where in some multiple charge trials jurors would be instructed to render "an all-or-nothing verdict",[9] and in our view this could have consequences undesirable to the administration of criminal justice.

The rationale of the multiple count exception to the Sealfon doctrine emanates from "the judicially recognized fact that juries frequently convict on some counts but acquit on others, not because they are unconvinced of guilt, but simply because of compassion or compromise." United States v. Fox, 140 U.S.App.D.C. 129, 132 n. 22, 433 F.2d 1235, 1238 n. 22 (1970).[10]

"The vogue for repetitious multiple count indictments may well produce an increase in seemingly inconsistent jury verdicts, where in fact the jury is using its power to prevent the punishment from getting too far out of line with the crime." United States v. Maybury, 274 F.2d 899, 902 (2d Cir. 1960). This is why inconsistent and seemingly irrational jury verdicts are commonplace with multiple count indictments.

If appellant had been first tried on one charge (threats), with a general verdict being returned, as in Ashe v. Swenson, *supra*, and Sealfon v. United States, *supra*, one might well be in a position to ascertain what the jury *must* have determined factually. However, the examination[11] encouraged in *Ashe* is unavailing here.

We conclude the doctrine of collateral estoppel does not apply in this instance and we reverse with instructions to reinstate the indictment as it relates to the charge of obstruction of justice.

So ordered.

KERN, Associate Judge (concurring):

I agree that the doctrine of collateral estoppel does not bar another trial in this case but I reach this conclusion by a different route than that taken by the majority.

In my view the action by the jury in the first trial did *not* in effect constitute the

---

8. "Threats" as used in both statutes means only that the words had "a reasonable tendency to intimidate." United States v. De Stefano, 476 F.2d 324, 330 (7th Cir. 1973). "The gist of the crime [threats to do bodily harm] is that the words used are of such a nature as to convey a menace or fear of bodily harm to the ordinary hearer." Postell v. United States, D.C.App., 282 A.2d 551, 553 (1971).

9. Bickel, Judge and Jury—Inconsistent Verdicts In The Federal Courts, 63 Harv.L.Rev. 649, 652 (1950).

10. If the trial court ruling on this question were to be approved, one would be led to inquire whether if, after acquitting on the "threats" charge, the jury had convicted on the obstruction of justice charge, the latter

conviction should be set aside as prohibited to the jury due to the asserted factual findings by the jury on the "threats" charge. Needless to say, under the decisions establishing the permissibility of inconsistent verdicts by juries, *supra*, a conviction under the obstruction of justice charge was decidedly open to the jury notwithstanding the acquittal of the "threats" charge.

11. *Ashe* would require an examination of "the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, [to] conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." Ashe v. Swenson, *supra*, 397 U.S. at 444, 90 S.Ct. at 1194.

rendition of inconsistent verdicts, which in criminal cases where there are multiple counts have been recognized as proper and consistently upheld on appeal. I deem instructive on this point the comment by Professor Bickel, which although made in the context of a civil trial, seems on principle equally applicable to jury action in a criminal case. He stated:[1]

> *Compromise verdicts are distinguished . . . from inconsistent ones.* The jury will render a compromise verdict, by definition, when it could not as an entity make up its collective mind on the issue of liability itself; that is, the jury is hung. Where the verdicts are inconsistent, the explanation is that the jury *as a whole* was convinced that liability existed, but considered mitigating circumstances or other factors which moved it, *again as a whole*, not to impose the full consequences of the decision it had reached. These distinctions are not insignificant; the fundamental notion is that parties to a law suit are entitled to the true, unclouded judgment of *all* twelve jurymen, and that only when it is plainly evident that the verdict does not in fact embody the considered, final, and individual decisions of *all* twelve jurors will it be upset, other infirmities to the side. (Footnote omitted.) (Emphasis added.)

I believe all we can conclude from the jury's verdicts in appellant's first trial is that it rendered two acquittals and was unable to make up its collective mind on appellee's guilt or innocence on the obstruction of justice count, thus rendering the trial of that charge a nullity. Hence, I am of opinion that we may not conclude from the verdicts rendered in the first trial that the jury, as a whole, was exercising a form of lenity in acquitting on two counts

and hanging on the third count—the rationale for accepting inconsistent verdicts.

Accordingly, I see the question presented us as whether the trial court has correctly concluded in this case that the jury's acquittal of appellee on the charge of threats at his first trial determined an ultimate issue of fact, *viz.,* appellee did not threaten complainant (another police officer), so as to preclude the government under the familiar principle of collateral estoppel from trying appellee again on the charge of obstructing justice by force and threats.

Our task, when faced with this kind of issue, has been defined by the Supreme Court to be

> [to] examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration. [Ashe v. Swenson, 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed. 2d 469 (1970).]

Undertaking such an examination in this case, I find that the indictment in the first case ending in acquittal for Officer Smith[2] charged that he had "threatened to injure the person of William W. Johnson." The prosecutor in his opening statement to the jury said:

> You will hear evidence that . . . Officer Smith had testified the day before at the trial, that he, Officer Smith, was the seizing officer. You will hear evidence that he threatened Officer Johnson, if he, Officer Johnson, testified that he was the seizing officer, that he would "wipe him out", or kill him.

Officer Johnson, the complainant, took the stand for the government and testified

1. Bickel, Judge and Jury—Inconsistent Verdicts In the Federal Courts, 63 Harv.L.Rev. 649, 654–55 (1950).

2. Officers Johnson, Smith and Rosa participated (a) in the arrest of another individual

for a narcotics offense and (b) the seizure from the arrestee of contraband. A dispute arose between the officers as to exactly who had done what during these events.

that appellee, who was "mad", said, "If you testify and tell the truth, I'll lose my job" and "If I lose my job, I'll blow you away." Johnson further testified that he had understood and believed from these words that appellee would kill him if he testified. Johnson was quite definite in his testimony that he believed appellee was serious when he spoke these words and meant what he had said. On cross-examination, Johnson denied that he had ever before heard appellee, with whom he had worked and continues to work, use "such terms" or "similar terminology." The complainant did testify that the words, "I'll blow you away", had been directed on occasion to him "in jest" by others but contended that the circumstances under which appellee spoke these same words was "different."

When the third officer who participated with Johnson and appellee in the arrest of the narcotics offender, viz., Officer Rosa, took the stand as a prosecution witness he testified that he had heard appellee make the remark, "I'll blow you away" to Officer Johnson, but that he had heard appellee "use worse than that" to other officers and individuals, had heard that term "at the station house" and "took it as another one of those things", and did not construe the words as a threat to the life of Officer Johnson. He termed the complainant, Officer Johnson, as getting mad "pretty quick" and characterized appellee and Johnson as not the best of friends.

Appellee did not take the stand and the trial attorneys made their arguments to the jury. The prosecutor argued:

Now, let's go on and examine the language of the threats. The law requires that the defendant did threaten to do injury [to] someone else—in this case, Officer William Johnson. Is there any question that the defendant threatened him? "I'll wipe you out"—that's a threat, isn't it? That's not "Good morning", that's not "How are you?"—it's a threat. Is there any question of that? None whatsoever. And, if you

believe that he did threaten him, he's guilty.

Defense counsel in his argument to the jury remarked:

Officer Rosa, the Government's witness, said that the language used "I'll wipe you out"—he said "I'll wipe you out", I believe; Johnson said, "I'll blow you away"—Officer Rosa said that this was an "everyday" occurrence. *Again, this is the language used by police officers, because we're not talking about three ordinary citizens,* three strangers; we're talking about three police officers, who knew each other. *He said this was an everyday occurrence. He stated that he did not believe it was a serious threat.* · · · (Emphasis added.)

In reply, the prosecutor argued to the jury:

Now, Mr. Christmas [appellee's counsel below] talked about vernacular and that "I'll wipe you out" is a common thing, and that other officers say it all the time. Perhaps he would have you believe that officers walk around saying to each other, "I'll wipe you out". Now, Leslie Smith did not walk into that witness room and just say something miniscule to Officer Johnson something unimportant. You just don't flip out with words like "I'll wipe you out", "I'll blow you away". · · · This is not a casual comment under any circumstances.

Finally, the trial court instructed the jury:

The second count is threatening to injure a person. The defendant in this case is charged, in count two of the indictment with threatening to injure a person. In order to find the defendant guilty as charged, the Government must prove, beyond a reasonable doubt, that the defendant, within the District of Columbia, threatened to injure the person of *another, namely, William W. Johnson.* (Emphasis added.)

As I read the record of the first case, summarized above, a rational jury could

not have grounded its acquittal of appellant of threats upon a finding that the words, "I'll blow you away" were never uttered. Rather, it seems to me that the defense succeeded in persuading the jury that given the rough and ready world in which police officers live and work the words so uttered did *not* intimidate or threaten *the particular hearer of them, Officer Johnson.* The jury's acquittal constituted an ultimate finding of only that fact, *viz,* Johnson, as a case-hardened police officer, was not threatened by these words. However, to convict of obstructing justice by threats and force it is not necessary to prove the hearer himself was intimidated by the threat but rather that upon all the evidence the words uttered had "a reasonable tendency to intimidate." [3]

Thus, I am persuaded that the jury in the first case "grounded its verdict [of acquittal] upon an issue other than that which the defendant [appellee] seeks to foreclose from consideration" in this case, Ashe v. Swenson, *supra,* 397 U.S. at 444, 90 S.Ct. at 1194, and hence the trial court's order of dismissal cannot stand.

---

3. Jackson v. United States, 513 F.2d 456 (D.C.Cir., 1975), citing United States v. De Stefano, 476 F.2d 324, 330 (7th Cir. 1973). *Jackson* and *De Stefano* arose under 18 U.S.C.

1503 (1970), the federal obstruction of justice statute, which is phrased in terms similar to our § 22-703.