**UNITED STATES of America,
Appellee,**

v.

**Daniel BETHEA, Jr., Appellant.**

**No. 72–2409.**

United States Court of Appeals,
Fourth Circuit.

Argued April 4, 1973.

Decided Aug. 29, 1973.

J. David James, Greensboro, N. C. (Smith, Patterson, Follin & Curtis, Greensboro, N. C., on brief), for appellant.

William L. Osteen, U. S. Atty., for appellee.

Before WINTER and FIELD, Circuit Judges, and BLAIR, District Judge.

FIELD, Circuit Judge:

This appeal arises from the conviction of Daniel Bethea, Jr., of violation of the Military Selective Service Act of 1967, 50 App. U.S.C. § 462. Appellant was charged in a three count indictment with failure to report for induction into the military service, failure to keep his Local Draft Board advised of his current address, and failure to report for

an armed forces physical examination. Tried to a jury on October 2, 1972, a verdict of guilty was returned on all three counts. The counts were consolidated for sentencing, and appellant was sentenced to thirty months imprisonment.

Bethea's Selective Service file disclosed that he registered with his Local Board on September 27, 1968, at which time he gave his mailing address as 1321 Ardmore Drive, Greensboro, North Carolina. In July of 1969 a Current Information Questionnaire was mailed to him at that address but was not returned to the Board and on December 2, 1969, the Board declared him delinquent and classified him 1–A. A notice of delinquency and reclassification was mailed to Bethea and, receiving no response thereto, on January 19, 1970, Bethea was ordered to report for induction on February 9th of that year. However, in the light of the Supreme Court's decision in Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970), the Board rescinded its action, cancelled Bethea's order to report for induction, and once again classified him 1–A. Notification and a new draft card were mailed to him at the address on Ardmore Drive. On July 2, 1970, the Board mailed to the appellant an order to report for a physical examination on July 16, 1970, but he failed to report on that date. Thereafter, on September 25, 1970, he was mailed an order to report for induction on October 15, 1970, but failed to report in response thereto. None of the various notices mailed to Bethea at the Ardmore Drive address were returned to the Local Draft Board.

On appeal Bethea assigns numerous errors by the trial court as grounds for reversal. However, we need discuss only three of the issues presented by appellant:

(1) Whether the trial court erred in denying appellant's motion to dismiss all charges on the basis of an alleged breach of an agreement between appellant's counsel and the United States Attorney.

(2) Whether the order to report for induction issued by the Greensboro, North Carolina, Local Draft Board on September 25, 1970, was authorized by the regulations then in effect.

(3) Whether the contradiction, if any, between the jury's verdict on counts one and three of the indictment and its verdict on count two of the indictment requires reversal of appellant's convictions on any or all counts.

I

Appellant's first assignment of error is the trial court's refusal to dismiss all charges on the basis of the breach of an alleged agreement between appellant's original attorney and the United States Attorney. That agreement was to the effect that the United States Attorney would recommend dismissal of the case to the trial judge if appellant submitted himself for induction. The same recommendation would be made if the appellant failed to pass the physical examination because of a physical condition which was in existence prior to the date he was first ordered to report for induction. Appellant submitted himself for induction and passed the physical examination. The Army, however, refused to induct him upon moral grounds stemming from three misdemeanor convictions, all of which antedated his first order to report for induction. Under these circumstances the United States Attorney refused to recommend dismissal.

At the hearing on the motion to dismiss, appellant's original counsel testified that at the time of his agreement with the United States Attorney he did not know of the possibility of a moral disqualification. He testified further that no negotiations had taken place in regard to any plea by Bethea. The district judge ruled that even if the United States Attorney's promises were construed to include a promise to recommend dismissal if appellant was rejected for any reason, the court would not

grant the motion to dismiss. His refusal was based primarily upon the absence of a plea which would be necessary to bring into play the holding of Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), as well as his own discretionary power.

Appellant argues that the agreement, read in view of the reasonable expectations of the parties, should be construed to mean that the United States Attorney would recommend dismissal of the case if appellant was rejected on any grounds which antedated his original order to report and that such an agreement is enforceable under the principle of *Santobello*. The United States Attorney contends that the agreement should be narrowly construed, that Santobello does not apply to this case in the absence of a plea, and that in any event the trial judge's refusal to dismiss on discretionary grounds renders harmless any failure to perform the agreement. Appellant argues that the failure to perform could not be harmless in view of the trial judge's consistent record of accepting recommendations by the United States Attorney.

■■ We need not engage in an elaborate examination of the terms of the understanding between appellant's counsel and the United States Attorney, or of the impact on the trial judge of the government's decision not to recommend dismissal since we do not consider this an agreement enforceable under *Santobello*. The concern of *Santobello* was to protect a defendant who by pleading guilty has surrendered valuable constitutional rights in exchange for the prosecution's assurances. That concern has no application to the facts of this case. Appellant's submission for induction surrendered none of the rights protected by *Santobello*. In the context of this case, Bethea's conduct was at most only a factor to be considered by the prosecutor in deciding whether or not to prosecute, a decision not reviewable here.

## II

Unfortunately, the specific regulation in effect on the date of Bethea's order for induction was not introduced at the trial, and neither the United States Attorney nor defense counsel appeared to have definitive knowledge with respect thereto. Instead, the Secretary of the Local Board was permitted to testify without objection that the language of 32 C.F.R. § 1631.6, which was in effect at the time of the trial was contained in the pertinent regulation which was operative on the date of Bethea's induction order. 32 C.F.R. § 1631.6 provides in part as follows:

> "when a registrant in whatever classification has refused or otherwise failed to comply with an order of his local board to report for and submit to an Armed Forces examination, he may, after he is reclassified into Class 1–A or 1–A–O be selected and ordered to report for induction even though he has not been found acceptable for service in the Armed Forces and a Statement of Acceptability (DD Form 62) has not been mailed to him."

This language of the regulation clearly authorizes an order of induction for any registrant who, like Bethea, has failed to comply with an order to report for a physical examination, and if such language was contained in the regulation which was in effect on September 25, 1970, Bethea's order of induction was facially valid.

■ Counsel failed to present to us either in their briefs or in oral argument a copy of the regulation which was in effect on the operative date, but our examination of the history of the regulation reveals that no less than four versions of 32 C.F.R. § 1631.6 (formerly 32 C.F.R. § 1631.7) were promulgated between October 1967 and December 1971. The relatively frequent revisions of these regulations during that period may explain the confusion as to which regulation was in effect on any given date, but the district court should have

insisted that the operative regulation be introduced at the trial. In a case with potentially severe consequences to the defendant precision in this respect is vital. It is clear that local draft boards must act pursuant to specific authority, United States v. Machado, 306 F.Supp. 995 (N.D.Cal.1969), and a party cannot be prosecuted for disobedience of an invalid order, United States v. Reeves, 325 F.Supp. 179 (M.D.Fla.1971). It is elementary, too, that if an order is invalid on the date of issuance it cannot be rendered valid by subsequent revisions of either the law or the regulations.

A review of the present regulation and its predecessors indicates that the regulation subsequently declared unlawful by the Supreme Court in Gutknecht v. United States, *supra,* took effect on October 16, 1967. This regulation, 32 C.F.R. § 1631.7, authorized a local board to fill a call from registrants who had been classified 1–A or 1–A–O and had been found to be acceptable for service and to whom a Statement of Acceptability (DD Form 62) had been mailed at least twenty-one days before the date fixed for induction. This regulation also contained the provision condemned in *Gutknecht* authorizing the induction of delinquents despite the fact that they had not previously been found acceptable for military service. The regulation was revised, effective December 1, 1969, before *Gutknecht* was decided, and contained the same provision with respect to the induction of the normal class of registrants, as well as the provision with respect to the accelerated induction of delinquents. This revision, however, contained an additional provision that any registrant in Class 1–A or 1–A–O

"whose random sequence number has been reached, and who would have been ordered to report for induction except for delays due to a pending personal appearance, appeal, preinduction examination, reclassification, or otherwise, shall *if and when found acceptable* and when such delay is con-

cluded, be ordered to report for induction next after delinquents and volunteers," (emphasis added).

It should be noted that this new provision, designed to penalize what the Selective Service viewed as dilatory tactics, did not dispense with the requirement that non-volunteers and non-delinquents be found acceptable for military service prior to any order to report for induction. This was the regulation which was in effect on September 25, 1970, the date on which Bethea's order for induction was issued.

On September 26, 1970, one day after the issuance of Bethea's order, 32 C.F.R. § 1631.7 was again revised. This revision retained the same provision with respect to the induction of normal registrants, deleted the provision with respect to the accelerated induction of delinquents, and for the first time authorized the issuance of orders to report for induction to registrants who "failed to comply with an order of his Local Board to report for and submit to an Armed Forces physical examination * * * even though he has not been found acceptable for service in the Armed Forces and a Statement of Acceptability (DD Form 62) has not been mailed to him." This revised regulation was obviously promulgated in response to the decision in *Gutknecht.* The current regulation which carries the designation 32 C.F.R. § 1631.6 and became effective in December 1971 is identical in all relevant parts to the 1970 revision.

From this review it is clear that the court below erred in trying Bethea upon the assumption that his order of induction was issued pursuant to a regulation substantially the same as the one in effect at the time of trial. It is equally clear that the order directing Bethea to report for induction issued by the Local Board on September 25, 1970, was invalid. Appellant had not been found to be acceptable for service in the Armed Forces on that date and the regulation then in effect clearly required a

finding of acceptability prior to the issuance of an order to report for induction. It goes without saying that the delinquency exception to this requirement of the regulation was nullified by *Gutknecht* and the only remaining exception with respect to volunteers has no application to this case.

It is, of course, paradoxical that Bethea should escape responsibility for refusing to report for induction as a result of his nonfeasance in failing to report for a preinduction physical. This anomaly was recognized in United States v. McClintock, 311 F.Supp. 1119 (N.D. Cal.1970), but the court concluded at page 1121:

> "The fact that there is presently no provision for inducting, rather than prosecuting, registrants who fail to take a physical examination is of course a product of the *Gutknecht* and *Breen* [Breen v. Selective Service Local Board No. 16, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653] decisions. Prior to those decisions such individuals were ordered to report for induction as delinquents under the first proviso of 32 C.F.R. § 1631.7(a) which allowed for induction without the finding of acceptability or the mailing of a DD 62. The Court cannot supply such regulations and in their absence is forced to conclude that the presently valid portion of § 1631.7 was not complied with, that strict compliance with the order of call regulation is mandatory, United States v. Baker, 416 F.2d 202 (9th Cir. 1969), and therefore that the order to report was invalid."

We find the conclusion reached in *McClintock* to be inescapable, and since Bethea's order for induction was invalid his conviction on the first count of the indictment must be reversed.

### III

■ The asserted contradiction between the jury's verdict on count two of the indictment, failure to keep the Board advised of his current address, and the verdict on counts one and three, failure to report for induction and failure to report for an Armed Forces examination can only be appraised in light of the law defining those duties and the circumstances necessary to support a guilty verdict. It is established that in order to fulfill the registrant's duty to keep the local board advised of a current address, he need only provide the board with an address which is the beginning of a chain from which the registrant may reasonably expect to receive communications from the board. Bartchy v. United States, 319 U.S. 484, 63 S.Ct. 1206, 87 L.Ed. 1534 (1943); United States v. Ebey, 424 F.2d 376 (10 Cir. 1970). Appellant testified that he left instructions with his mother that any mail received at his North Carolina address was to be forwarded to his aunt in Boston, Massachusetts, where appellant resided for a time and thereafter visited periodically. If believed by the jury, this testimony provided a defense to count two.

■ It is equally well established that in order to sustain a conviction on counts one and three, the government must show that the appellant had actual notice of the orders to report. United States v. Williams, 421 F.2d 600 (10 Cir. 1970); United States v. Rabb, 394 F.2d 230 (3 Cir. 1968). In the present case the government attempted to prove actual notice by introducing evidence that the orders to report were mailed to appellant's North Carolina address, buttressed by the rebuttable presumption that mail properly addressed is timely received. Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932); United States v. Karnap, 477 F.2d 390 (4 Cir. 1973).

The contradiction lies in the fact that if appellant did in fact receive the orders to report by means of the chain of addresses he had created, while he may have been guilty of failure to report, he cannot possibly be held to have failed in his duty to keep his board advised of his address. Similarly, if one assumes that appellant did not provide a good chain of addresses, as charged in count two, the presumption supporting receipt of the orders to report dissolves, and the gov-

ernment must show actual notice by some other means. It appears that in the present case the government relied exclusively on the presumption.

█ Under the circumstances, it is clear that the verdict on counts one and three and the verdict on count two were contradictory. The question remaining is whether this contradiction is fatal to the jury's verdict on any or all of the counts. The government relies upon United States v. Flowers, 255 F.Supp. 485 (E.D.N.C.1966), for the proposition that "it is settled beyond cavil in the Federal courts that verdicts on different counts of a single indictment returned by the same jury at the same time are valid even though they may be logically inconsistent." This language in *Flowers* was based upon the holding of the Supreme Court in Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932), that a jury verdict of guilty on one count was not rendered void by the same jury's acquittal on a second count although the identical evidence logically supported convictions on both counts. The court reasoned that the jury had apparently assumed the power to ignore the court's instructions and the clear evidence of guilt on the second count in order to exercise a measure of lenity. In United States v. Maybury, 274 F.2d 899 (2 Cir. 1960), the court, refusing to extend the *Dunn* rule to a case which was tried to the court, emphasized the role of the jury in our system of justice. "The vogue for repetitious multiple count indictments may well produce an increase in seemingly inconsistent jury verdicts, where in fact the jury is using its power to prevent the punishment from getting too far out of line with the crime." Id. at 902.

Here, appellant's guilt or innocence on all counts depended upon the jury's resolution of one factual question—was the North Carolina address to which the orders were sent a "good" address? If it was "good" conviction on count two was impossible; if it was not "good" conviction on counts one and three was impossible. Assuredly, conviction on all three counts was not logically possible. This

is a sharply contrasting situation from that in Dunn v. United States, *supra*, where both the evidence and logic dictated that the defendant, charged with unlawful possession of intoxicating liquor and sale of the same, was guilty of both of the offenses or none. The rationale of *Dunn* has no application to this case. That rule, justified as a check on the "excessive zeal of prosecutors," United States v. Maybury, *supra*, 274 F.2d at 903, should not be converted into an inflexible shield for the overzealous and irrational behavior of a jury.

Having determined that appellant's conviction cannot stand on all counts, the question arises as to which, if any, of the convictions should be permitted to stand. In Thomas v. United States, 314 F.2d 936 (5 Cir. 1963), a jury conviction on a two count indictment was reversed where one of the counts was predicated on the smuggled drug having originated in the United States, while the other count was predicated on the smuggled drug having been acquired outside the United States. In that case the court struck down only the count which relied upon the drug's origination in the United States, since the evidence was overwhelmingly clear that the drug was obtained outside the United States, the defendant having been apprehended when he attempted to pass through customs.

However, in order for us to allow one of the convictions in the present case to stand, we would have to determine that the evidence on one count was so clear as to leave no reasonable doubt about appellant's guilt on that count rather than the others. The jury's resolution of this problem obviously is of no aid to us. Other than the evidence that the orders were mailed, the most significant evidence in support of the government's case was the testimony of the F.B.I. agent who arrested the appellant. The agent testified that at the time of his arrest Bethea stated: "Well, I never received any notice. I probably attribute that to the fact that I never notified the Board of where I'm living, and I've been living in various places throughout the Boston area." Appellant took the stand

and denied having made the statement ascribed to him, and also testified as to the instructions he had left with his mother regarding the forwarding of his mail. Thus, it is clear that the factual determinations of the jury rested on the credibility of the witnesses, and it would be inappropriate for us to attempt to determine at this distance which witness was telling the truth. This situation is clearly distinguishable from United States v. Thomas, *supra*, where uncontested facts were the basis of the appellate court's affirmance on one count.

Accordingly, we must reverse Bethea's convictions on all counts. Because of our disposition of count one in Section II of this opinion, the trial court will on remand dismiss the case as to that count. Upon a new trial on counts two and three, the trial judge will instruct the jury that conviction on one count will bar conviction on the other unless the government can demonstrate by some means other than the mail that appellant received actual notice of the order to report for a physical examination.

Reversed and remanded.