**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Barry L. MATHIS, Defendant-Appellant.**

**No. 77–2075.**

United States Court of Appeals,
Seventh Circuit.

Argued April 10, 1978.

Decided June 22, 1978.

As Amended June 29, 1978.

**416**

Elliott M. Samuels, Chicago, Ill., for defendant-appellant.

James T. Hynes, Chicago, Ill., for plaintiff-appellee.

Before SWYGERT and TONE, Circuit Judges, and JAMESON, Senior District Judge.*

JAMESON, Senior District Judge.

Appellant, Barry L. Mathis, was charged in a two count indictment of assaulting a federal officer by use of a deadly weapon, in violation of 18 U.S.C. § 111[1] (Count I), and of robbery of government property, in violation of 18 U.S.C. § 2112[2] (Count II).

---

* The Honorable William J. Jameson, United States Senior District Judge for the District of Montana, is sitting by designation.

1. 18 U.S.C. § 111 provides:
   Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.

   Whoever, in the commission of any such acts uses a deadly or dangerous weapon, shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

2. 18 U.S.C. § 2112 provides:
   Whoever robs another of any kind or description of personal property belonging to the United States, shall be imprisoned not more than fifteen years.

He entered a plea of guilty to the robbery charge and to the lesser included offense of assaulting or interfering with a federal officer, without the use of a deadly weapon. He was sentenced to imprisonment for eight years on the robbery count and three years on the assault count, the sentences to run concurrently. On appeal this court remanded to the district court with directions to vacate the judgment of guilty and grant a new trial.

Following a jury trial, two guilty verdicts were entered. One verdict found Mathis "guilty of assaulting or interfering with a federal agent, without the use of a deadly and dangerous weapon, as a lesser included offense under Count I of the indictment". The other verdict found him guilty as charged in Count II. The district court sentenced Mathis to imprisonment for six years on Count II and three years probation on Count I, the sentences to run consecutively. Mathis contends that (1) the jury verdicts were fatally inconsistent and contradictory, (2) the district court abused its discretion in imposing consecutive instead of concurrent sentences, and (3) the district court erroneously imposed a more severe sentence after retrial.

### Factual Background

On November 4, 1975, Arthur T. Tahauri, an undercover agent of the Drug Enforcement Agency (DEA), received a telephone call from Mathis, and they agreed that Mathis would sell Tahauri one ounce of heroin for $1,000. Later that day Tahauri picked up Mathis in a government car and Mathis directed Tahauri to the location of the drug source. In the meantime Tahauri and three surveillance agents, who were to follow in other cars, devised a distress signal. If trouble occurred, Tahauri was to apply the brake pedal several times and the flashing of the brake lights would alert the other agents.

Tahauri testified that after waiting 10 or 15 minutes for Mathis' source of supply, he told Mathis he wanted to terminate the buy. According to Tahauri, Mathis then pulled out an automatic pistol, took the ignition key, and ordered Tahauri to give him the money or he would be killed. Tahauri depressed the brake pedal. He then gave Mathis the money. Mathis got out of the car, leaned back into the car through the open window, told Tahauri not to move, and ran into an alley.

Mathis admitted taking the money, testifying that he induced Tahauri to give him the money to count it, diverted Tahauri's attention, snatched the car keys, jumped out of the car and ran with the money. He denied having a gun or threatening to kill Tahauri.

Two agents testified that the brake lights came on a few minutes before Mathis left the car and stayed on until Mathis left, and that before leaving the car, Mathis leaned into the car window and paused before running away. One of the agents also testified that there was a "heated discussion or argument going on" before Mathis left the car. When he arrived to assist Tahauri, he found Tahauri "very excited, very angry, and very agitated". Neither agent saw a weapon in Mathis' possession.

### Inconsistent Verdicts

Appellant contends that the verdict of guilty to the lesser included offense of unarmed assault or interference with a federal agent, 18 U.S.C. § 111, necessarily means that the jury decided that Tahauri was not to be believed and that appellant was not in fact armed at the time of the robbery. Because a conviction for robbery of federal property under 18 U.S.C. § 2112 requires evidence of a taking of the property by force or threat of force, see Norris v. United States, 152 F.2d 808, 809 (5 Cir. 1946), cert. denied 328 U.S. 850, 66 S.Ct. 1118, 90 L.Ed. 1623 (1946), and because Tahauri's testimony regarding the armed force was not believed, appellant argues that the jury's verdict of guilty of the offense of robbery directly contradicts its verdict of guilty of interfering with a federal official without a weapon. Appellant then contends that since Tahauri's testimony was the only evidence adduced that Mathis used force, the Government's case was insufficient to support the robbery verdict.

Appellant recognizes the general rule that "[c]onsistency in the verdict is not necessary". *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932). He attempts, however, to distinguish *Dunn* by arguing that there the inconsistency was among a guilty verdict and two not guilty verdicts, whereas in his case the inconsistency was between two guilty verdicts.

■ We find no inconsistency in the jury verdicts. A verdict of guilty of assault or interference with a federal official without a weapon under 18 U.S.C. § 111 requires evidence that the defendant used some quantum of force or threat of force in committing the offense. The statute states, in pertinent part, that a person commits the offense by "*forcibly*" assaulting or interfering with a federal official. There was sufficient evidence of force or threat of force to support the jury's verdict under 18 U.S.C. § 111, and that force or threat of force equally suffices to support a verdict of guilty under 18 U.S.C. § 2112.

■ We likewise find no basis for any claimed distinction between this case and *Dunn.* Any arguable inconsistency arises not from the verdict of guilty of unarmed assault, but rather from the implicit verdict of not guilty of the offense of assault with a deadly or dangerous weapon. Moreover, the jury verdict "may have been the result of compromise", a matter into which *Dunn* forecloses inquiry. 284 U.S. at 394, 52 S.Ct. at 191.

Appellant also relies on *United States v. Bethea,* 483 F.2d 1024 (4 Cir. 1973), to support his contention that the inconsistent verdicts must be set aside. In *Bethea,* however, conviction on all the counts "was not logically possible" because evidence to prove one element of the offense in one count had the effect of directly negating the existence of one of the elements of the offenses in two other counts. *Id.* at 1030. There is no such logical impossibility of conviction on both counts in this case.

We conclude that the conviction on both counts should be affirmed.

## Consecutive Sentences

Appellant contends that the consecutive sentences for the two offenses, 18 U.S.C. §§ 111 and 2112, are improper because the "two convictions rest upon identical acts or conduct"—i. e., that his convictions for both the robbery and the unarmed interference with a federal official were based upon "a single transaction"—"the unarmed taking of money from Agent Tahauri". He argues that the *gravamen* of both offenses was the same and the necessity that the victim under 18 U.S.C. § 111 be a federal officer is "merely to satisfy federal jurisdictional requirements". (citing *United States v. Feola,* 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975)).

■ It is true that constitutional problems may arise if a court imposes multiple punishments for the same offense. See *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) and cases cited therein. As the Supreme Court recently noted, "[c]ases in which the Government is able to prove violations of two separate criminal statutes with precisely the same factual showing . . . raise the prospect of double jeopardy . . . ." *Simpson v. United States,* 435 U.S. 6, 98 S.Ct. 909, 912, 55 L.Ed.2d 70 (1978). A court may, however, in a proper case impose separate and consecutive sentences for violation of different statutory provisions in a single transaction. The test "is whether each provision requires proof of a fact which the other does not". *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). See also *United States v. Holtzman,* 440 F.2d 923, 927 (7 Cir. 1971).

■ In *United States v. Roundtree,* 527 F.2d 16, 20 (8 Cir. 1975), *cert. denied* 424 U.S. 923, 96 S.Ct. 1133, 47 L.Ed.2d 332 (1976), the court, relying upon the test set forth in *Blockburger,* found that 18 U.S.C. § 111 and 18 U.S.C. § 2112 each required "proof of facts that the other does not. 18 U.S.C. § 111 is designed to protect federal law enforcement officers while performing federal functions . . . and requires proof of those facts to sustain a conviction.

18 U.S.C. § 2112 is designed to protect those who have government property in their immediate possession and requires proof that the property taken belongs to the United States". The court concluded that "[s]eparate congressional policies are reflected in each of the two statutes . . . and proof of separate elements are necessary". While in *Roundtree* the defendant had a gun when he committed the two offenses and in that respect is factually distinguishable, we see no reason why the same rule should not apply where the conviction under § 111 is for a lesser included offense.

### More Severe Sentence

As noted *supra,* in the first sentence following the guilty plea the district court imposed concurrent sentences of eight years imprisonment on Count II and three years imprisonment on Count I. Following remand and the jury trial, the court reduced the period of imprisonment on Count II to six years and the sentence on Count I to three years probation, but ordered the sentences to run consecutively. In imposing this sentence the court stated that he suspected that his "sentence the first time may have been influenced" by his belief that Mathis was probably armed and that he was "going to reduce it somewhat".

■ Appellant contends that the change in the sentence from concurrent to consecutive imposes upon him "the possibility of a longer period of incarceration than he faced under his previous sentence", resulting in a denial of due process under *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In *Pearce* the Court held that "the imposition of a penalty upon the defendant for having successfully pursued a statutory right of appeal" would be "a violation of due process of law"—that due process requires that vindictiveness play no part in the sentence imposed after a new trial. *Id.* at 724, 89 S.Ct. at 2080. The Court concluded that "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant *occurring af-*

*ter the time of the original sentencing proceeding." Id.* at 726, 89 S.Ct. at 2081 (emphasis added). No information in the record concerning Mathis' conduct would warrant an increased sentence. On the contrary, the only objective information concerning his conduct after the original sentence was favorable. He had enrolled in college and had a good record at the Metropolitan Correction Center.

The Government does not question the absence of unfavorable information, but rather argues that the second sentences do not penalize appellant for his exercise of his right to appeal because "[a]lthough the total sentence is increased by one year, the period of incarceration has been reduced by two years". Relying upon an Illinois case, *People v. Lewis,* 52 Ill.App.3d 477, 10 Ill. Dec. 257, 367 N.E.2d 710 (1977), the Government urges us to view the second sentence as a whole and uphold it since "it clearly is less severe than the first". Moreover, the Government argues, the second sentence was not a product of vindictiveness prohibited by *Pearce,* since the district court clearly meant to give appellant a less severe period of confinement.

■ That there was no suggestion of vindictiveness on the part of the sentencing court does not, however, control the outcome here. We agree with the Court of Appeals for the Second Circuit that "on review this court must consider the *maximum which the appellant might be required to serve under the terms of the judgment". United States v. Barash,* 428 F.2d 328, 330 (2 Cir. 1970), *cert. denied* 401 U.S. 938, 91 S.Ct. 928, 28 L.Ed.2d 217 (1971) (emphasis added). Exercise of the right to appeal is deterred by the possibility of substantial fines, longer prison terms suspended with probation, and additional probationary periods after incarceration "just as certainly as an increase in the prison term itself". *Id.* at 331. Indeed, in pragmatic terms "[a]ny attempt to compare one kind of punishment with another and to pronounce one more or less severe than another . . . is wholly impractical". *Id.* at 332.

■ We recognize the general rule that appellate courts are barred from re-

**420**

viewing the exercise of statutory discretion in the imposition of sentences. They are not precluded, however, from vacating or correcting "sentences imposed in violation of constitutional or statutory rights". *United States v. Maples,* 501 F.2d 985, 986 (4 Cir. 1974). See also *Dorszynski v. United States,* 418 U.S. 424, 443, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974). Where a sentence has been imposed in violation of a constitutional or statutory right, the appellate court may in a proper case "correct the sentence rather than remanding the case for the execution of this ministerial act". *United States v. Mazzei,* 521 F.2d 639, 646 (3 Cir. 1975) (en banc), *cert. denied* 423 U.S. 1014, 96 S.Ct. 446, 46 L.Ed.2d 385 (1975). See also *United States v. Rivera Diaz,* 538 F.2d 461, 466 (1 Cir. 1976). Accordingly, we modify the district court judgment to the limited extent of ordering that the sentences for the two convictions be made to run concurrently, rather than consecutively. See *United States v. Albanese,* 554 F.2d 543, 549 (2 Cir. 1977).

### Conclusion

We affirm the convictions and sentences imposed, as modified herein.